UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

EARLE YAFFA and RONALD J. WEISS,
Executors of the Will of Joseph Flom;
JASON FLOM, and ELIZABETH YATES,

    Plaintiffs,

                              CONSOLIDATED
v.                      LEAD CASE NO. 3:12cv288/MCR/CJK
                           CASE NO. 3:15cv266/MCR/EMT

SUNSOUTH BANK; RONALD E. GILLEY;
and RONNIE GILLEY PROPERTIES, LLC.,

    Defendants.

SUNSOUTH BANK,

    CounterClaimant/Cross Claimant,

v.

RONALD E. GILLEY; and RONNIE GILLEY
PROPERTIES, LLC,

    Cross Defendants,

EARLE YAFFA and RONALD J. WEISS,
Executors of the Will of Joseph Flom; and
JASON FLOM; ELIZABETH YATES,

    Counter Defendants.
_____/

SUNSOUTH BANK,

    Plaintiff/Counter Defendant,

v.

NASHYORK, LLC and ELLIOT LEVINE,

    Defendants/Counter Claimants.
                                                              /

## **ORDER**

This case is in trial with a jury. The parties dispute the effect of the Limited Guaranties signed by the individual Plaintiffs,[1] guaranteeing the NashYork Loan. Each Limited Guaranty contains the following provision:

> Nature of Guaranty: Guarantor's liability under this Guaranty shall be open and continuous for so long as this Guaranty remains in force. Guarantor intends to guarantee at all times when due, whether at maturity or earlier by reason of acceleration or otherwise, Guarantor's portion of the Indebtedness. Notwithstanding any contrary provision elsewhere in this Guaranty or in any of the other Loan Documents, Guarantor's maximum liability and obligation to Lender under this Guaranty shall be **FIVE MILLION TWO HUNDRED FIFTY THOUSAND DOLLARS ($5,250,000.00)** of the amount of the Indebtedness outstanding from time to time and at maturity (whether maturity occurs on the Maturity Date specified in the Note or by earlier acceleration of the Note . . .) plus attorney's fees and costs reasonably incurred by Lender in the enforcement of this Guaranty.

---

[1] For purposes of this Order, the individual "Plaintiffs" include Elliot Levine, who appears as a Defendant/Counter Claimant in the consolidated case of SunSouth v. NashYork and Elliot Levine. His claims are in fact aligned with the Plaintiffs, and the cases have been consolidated for trial.

Consolidated Case No. 3:12cv288/MCR/CJK

Limited Guaranty, ¶ 3.01.

The "Indebtedness" is defined in the Limited Guaranty as the $28,500,000 original principal amount of the NashYork loan plus any renewals, modifications, extensions, substitutions, or consolidations. The parties agree this Note was a line of credit that could fluctuate.

Plaintiffs argue that each individual guarantor's liability under the Guaranty is limited to that guarantor's imputed percentage ownership of the NashYork Project, subject to the maximum amount stated on the face of Limited Guaranty.[2] The Plaintiffs maintain that the guarantor only guaranteed his or her "portion of the Indebtedness," and, because the amount currently due is less than $28,500,000, each individual's "portion" of liability on the current amount due is limited to the guarantor's imputed percentage of ownership instead of the maximum amount stated on the face of the Limited Guaranty. According to Plaintiffs, limiting their liability to each guarantor's ownership percentage is the only way to give meaning to all of the terms of the Guaranty, including the phrase "portion of the Indebtedness" and the

---

[2] Plaintiffs rely on the terms of SunSouth's Commitment Letter, Plaintiffs' Ex. 17, which states that the loan would be "unconditionally guaranteed as follows (representing 150% of each guarantors pro-rata share of ownership): . . . Name  Elliot H. Levine, % Owned  12.50%, Guaranty Amount  $5,250,000 . . . ."  The Floms and Elizabeth Yates are listed with the same 12.5 "% Owned" and the same $5,250,000 "Guaranty Amount."

Consolidated Case No. 3:12cv288/MCR/CJK

language stating that $5,250,000 is their "maximum" liability. After a careful review, the Court disagrees.

Under Florida law, absent an ambiguity, interpretation of a written contract is a question of law to be decided by the court, and the intent of the parties is determined from the plain meaning of the words used in the contract. *Wheeler v. Wheeler, Erwin & Fountain, P.A.*, 964 So. 2d 745, 749 (Fla. 1st DCA 2007); *see also Hurt v. Leatherby Ins. Co.*, 380 So.2d 432, 433 (Fla. 1980). When considering a contract's language, the Court must not consider terms in isolation but rather make "a reasonable interpretation of the language in the context of the entire agreement." *Herbst v. Herbst*, 153 So. 3d 290, 292 (Fla. 2d DCA 2014). Also, guaranties are construed strictly under Florida law, not expansively. *Scott v. City of Tampa*, 158 Fla. 712, 714 (Fla. 1947).

Reading the phrase, "Guarantor's portion of the Indebtedness," in context and not in isolation, the Court finds that the language is plain and unambiguous. "Indebtedness" is defined specially on the face of the Limited Guaranty as the original principal amount of $28,500,000, subject to fluctuation at any given time based on renewals, modifications, extensions or substitutions. Although the term "portion" is not specially defined, nothing in the Limited Guaranty suggests that the

guarantor's "portion of the Indebtedness" would fluctuate based on pro rata ownership when the amount due falls below $28.5 million, or that the guarantor's "portion" is anything other than the maximum amount plainly stated on the face of the Guaranty.  To the contrary, the language clearly provides that the maximum liability of the guarantor "shall be [$5.25 million] *of the amount of the Indebtedness outstanding from time to time*," (emphasis added) plus costs and attorney's fees.  This language expressly contemplates that the Indebtedness will fluctuate but that the guarantor's $5.25 million obligation will not (unless the total Indebtedness falls below that amount).  The $5.25 million "maximum" obligation makes it clear that the guarantors will never be liable for any greater portion of the outstanding Indebtedness, though the actual Indebtedness could be millions of dollars more than that "portion."  In other words, the plain language indicates that the guarantor intends to guarantee a $5.25 million portion of the fluctuating outstanding Indebtedness.

Plaintiffs argue that the term "portion" is ambiguous and should be construed against SunSouth as the drafter.  They also aks the Court to consider SunSouth's Commitment Letter, Plaintiff's Exhibit 17, in support of their argument that their "portion" should always be linked to their percentage of ownership in NashYork.  Absent an ambiguity, however, there is no basis for looking outside the four corners

of the Limited Guaranty itself. *See NCP Lake Power, Inc. v. Florida Power Corp.*, 781 So. 2d 531, 536 (Fla. 5th DCA 2001) (stating, where the plain language of a contract is clear and unambiguous, the Court may not look beyond its four corners to define the terms or explain the parties' intent"). However, even if the Commitment Letter is considered, it confirms the Court's plain reading of the Limited Guaranty. SunSouth's Commitment Letter shows the $5.25 million obligation listed as the "Guaranty Amount" and confirms that this amount was calculated based on the guarantor's pro rata percentage of ownership as agreed (150% of a 12.5 ownership percentage). The Commitment Letter further clearly states, "Said amount of guarantees shall remain in full force and effect for the duration of the loan," with no indication that the "Guaranty Amount" would fluctuate based on the amount of the outstanding Indebtedness.

Accordingly, based on the plain language of the Limited Guaranty, each guarantor is obligated to guarantee the maximum amount of $5.25 million of the

Consolidated Case No. 3:12cv288/MCR/CJK

outstanding Indebtedness, plus attorney's fees and costs.

**DONE and ORDERED** on this 7th day of March, 2016.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**